IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

STEVEN JONES,                      )
                                   )
    Petitioner,                    )
                                   )
    v.                             )          NO. 12-3168
                                   )
UNITED STATES OF AMERICA,          )
                                   )
    Respondent.                    )

## OPINION

RICHARD MILLS, U.S. District Judge:

Steven Jones was sentenced to 262 months following a plea of guilty.

Pending is Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence.

As directed, the Government filed a Response to the Motion.

The Petitioner has filed a Reply.

The Court concludes that no evidentiary hearing is warranted.

Petitioner is not entitled to habeas relief.

# I. BACKGROUND[1]

## A. Factual History

In September of 2008, Inspector Lee Mangold and Officer Matt McElfresh of the West Central Illinois Drug Task Force received information that Petitioner Steven Jones ("the Petitioner" or "Jones") was distributing cannabis and crack cocaine. On September 25, 2008, Inspector Mangold saw Walter Thompson leaving the Petitioner's residence. Walter Thompson and his wife, Janet, were registered confidential informants with the Illinois State Police and worked as confidential informants with Adams County law enforcement. Mangold believed both individuals to be reliable informants.

Janet and Walter Thompson informed the officers that Janet was going with Jones in the next few days on a trip to St. Louis to purchase drugs. Jones and Janet Thompson planned to travel together in a red Plymouth van. On September 26, 2008, in the early morning hours, Janet

---

[1]Most of the factual background is taken from the Report and Recommendation entered by United States Magistrate Judge Byron G. Cudmore on March 15, 2010. See United States v. Jones, Case No. 09-CR-30041, Doc. No. 19.

Thompson directed officers to the van, which was parked near a public alley at an apartment complex. Officer McElfresh and a supervisor later returned to the van and put a tracking device on it.

The tracking device was monitored by officers. After a one-to-two minute delay, the device transmitted its whereabouts to a remote computer. Shortly after 3:00 p.m. on September 26, 2008, Inspector Mangold saw the red van pull up to the Thompsons' residence, with Jones driving and Janet Thompson as a passenger. Officers continued monitoring the van through the remote computer as it traveled toward St. Louis. During the trip, Janet Thompson placed cell phone calls to Walter Thompson, who relayed information from her to Officer McElfresh. Inspector Mangold testified officers did not have direct contact with Janet Thompson because they did not want Jones to know she was passing on information regarding the trip to law enforcement agents.

Eventually, the van arrived in St. Louis. The narcotics transaction occurred at a house on Linton Avenue. Janet Thompson communicated through Walter Thompson that narcotics were purchased and she was

carrying cocaine for Jones. Officer McElfresh continued monitoring the tracking device on a computer in his squad car, and others officers also set up surveillance. At 10:30 p.m., Inspector Mangold and Officer McElfresh observed the van, began to follow directly behind it, and saw it fail to signal at an exit.

Canine Officer Saalborn, part of the surveillance team, started to follow the van. He initiated a traffic stop after learning from Inspector Mangold that the van had failed to signal at an exit. Officer Saalborn made contact with Jones, asked for his driver's license, and conducted a canine sniff of the van. After the canine alerted on the passenger door, Saalborn conducted a pat down search of Jones, but found nothing. Janet Thompson then exited the van, walked back to Officer McElfresh, who had just arrived, and handed him the drugs. Saalborn issued Jones a written warning citation for the traffic violation. Jones was transported to the Adams County Sheriff's Office, where he was interviewed by officers. Jones then made incriminating statements regarding his drug activity.

On May 6, 2009, a federal grand jury charged Jones with knowingly

and intentionally possessing with the intent to distribute 5 or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

## B. Motion to Suppress Evidence

On January 19, 2010, the Petitioner filed a motion to suppress evidence, wherein he sought to suppress all items seized at the time of his arrest, in addition to all statements made subsequent to his arrest. Jones claimed he did not commit a traffic violation prior to the stop, the Government had failed to establish the reliability of the canine used to conduct a sniff on Jones's vehicle, and the length of his detention prior to the finding of any contraband far exceeded the scope of the original stop.

The motion to suppress was referred to Judge Cudmore for an evidentiary hearing and Report and Recommendation. On March 9, 2010, Judge Cudmore heard evidence and the arguments of counsel and, after taking the matter under advisement, issued a Report and Recommendation on March 15, 2010. Judge Cudmore found the law enforcement officers to be credible witnesses and determined that the stop of Jones's van was

constitutional and supported by probable cause.[2]  Moreover, Judge Cudmore considered Officer Saalborn's testimony regarding the canine sniff, finding that the officer was credible and the canine sniff was reasonable and not in violation of the Fourth Amendment.

Judge Cudmore further found that even if no traffic violation occurred, reasonable suspicion supported a Terry stop of the vehicle.  See Terry v. Ohio, 392 U.S. 1, 21-22 (1968).  This conclusion was based on Judge Cudmore's finding that two informants, Janet and Walter Thompson, provided "extensive, detailed information to law enforcement" that was reliable and corroborated by law enforcement.  Judge Cudmore further noted that officers received "contemporaneous transmissions from the tracking device that were consistent with the information provided by the Thompsons regarding the van's whereabouts."  Finally, the Report and Recommendation concluded that the stop was constitutional, even if a traffic violation did not occur.  Therefore, Judge Cudmore recommended that Jones's motion to suppress be denied.

---

[2]One of the officers, Matt McElfresh, died in a recreational vehicle accident on May 30, 2009, which was prior to the suppression hearing.

On April 14, 2010, United States District Judge Jeanne E. Scott adopted the Report and Recommendation and denied Jones's motion to suppress.

C. Guilty Plea and Change of Plea Hearing[3]

At a pre-trial conference held the day before the trial was scheduled, the Petitioner's counsel asked the Court to inquire of Jones if he still intended to exercise his right to a jury trial. Jones responded by saying that he had decided to plead guilty. The hearing was recessed to provide Jones the opportunity to think about his decision, discuss his desire to plead guilty with his counsel, and to allow counsel to answer any questions he had.

When the Court reconvened several hours later, it inquired of Jones and his counsel regarding Jones's ability to enter a knowing plea. Counsel stated he had no reason to doubt the Petitioner's competence and his ability to enter a knowing plea. Jones stated he had sufficient time and was

_____

[3]The Court relies on the transcript of the Hearing, which was held on March 9, 2010. See United States v. Jones, Case No. 3:09-cr-30041, Doc. No. 50.

satisfied with counsel's representation.

Subsequently, the Government discussed the essential elements of the offense. The Court informed Jones of the maximum potential punishment he would face and explained his rights were he to proceed to trial. The Court then inquired of the Petitioner's intent to plead guilty. Jones stated no one had made any promises which persuaded him to plead guilty. Moreover, no one threatened Jones or made him feel like he had to plead guilty. The Petitioner acknowledged he was entering the guilty plea based on his own free will.

The Court explained the sentencing process, including the pre-sentence investigation and report and the application of the sentencing guidelines. The Government summarized its evidence and the Court continued with the plea colloquy. Jones acknowledged he did what the prosecutor said he had done. On May 10, 2010, therefore, Jones pled guilty after stating he understood the proceedings and had decided to plead guilty based on his own free will.

D. Motion to withdraw guilty plea

On June 25, 2010, Jones filed a pro se motion to withdraw his guilty plea. On July 14, 2010, Jones's attorney reported that Jones wished to withdraw the pro se motion. On July 20, 2010, Jones filed another pro se motion to withdraw the plea and also requested the appointment of counsel.

On August 19, 2010, a hearing was held before the undersigned. At the hearing, following the Court's inquiry, the Petitioner confirmed that he wanted the same counsel to continue representing him. Accordingly, the Court denied the motion in its entirety.

E. Motion to aggrieve an unlawful act

On September 8, 2010, the Petitioner filed a pro se Motion to Aggrieve an "Unlawful Act" and Motion to Appoint Counsel. In the motion, Jones alleged that the tracking device placed on his vehicle violated his constitutional rights. The motion was re-characterized as a motion to suppress and referred to Judge Cudmore for a Report and Recommendation.

On September 21, 2010, Judge Cudmore held a hearing on the

motion to suppress. In the Report and Recommendation entered on September 22, 2010, Judge Cudmore noted that the use of the tracking device had been addressed as a factual matter previously in ruling on the motion to suppress. Judge Cudmore further observed that Jones's counsel had stated that he previously discussed the tracking device issue with the Petitioner a number of times.

Judge Cudmore concluded that regardless of the use of the tracking device, the investigating officers were receiving information from the confidential informant in the van who was talking by cell phone to them about the drug deal. Accordingly, the result should be the same whether the tracking device evidence was considered or not in that the evidence should not be suppressed. The Report and Recommendation further stated that Jones acknowledged he wanted counsel to continue to represent him.

On October 18, 2010, the Court entered an Order adopting the Report and Recommendation and denying the Petitioner's Motion to Aggrieve an "Unlawful Act."

F. Sentencing and appeal

On October 19, 2010, a sentencing hearing was held. After ruling on the Petitioner's objections, the Court found that he qualified as a career offender based on two prior crimes of violence in Adams County, Illinois: (1) aggravated criminal sexual assault; and (2) unlawful restraint. The Court determined the offense level to be 34 with a criminal history category of VI, resulting in a guidelines range of 262 months to 327 months of imprisonment, to be followed by ten years of supervised release.

Following the sentencing, Jones filed a notice of appeal. He raised one issue – whether the Court committed procedural error when imposing sentence because, according to Jones, it did not consider the applicable statutory factors and non-frivolous arguments made by counsel at sentencing. The United States Court of Appeals for the Seventh Circuit affirmed the judgment on November 14, 2011. See United States v. Jones, 438 F. App'x 515 (7th Cir. 2011) (unpublished). The appellate court determined that this Court's discussion of the sentencing factors met the procedural requirements of sentencing and rejected the Petitioner's arguments that the Court had failed to address his arguments in mitigation

and improperly presumed that a within-guidelines sentence was reasonable.

### G. Motion pursuant to 28 U.S.C. § 2255

On June 27, 2012, the Petitioner filed the Motion [Doc. No. 1] under

28 U.S.C. § 2255.  In the motion, Jones raises the following four claims:

(1) Jones received ineffective assistance of counsel because his counsel failed to prepare an effective defense, resulting in Jones finding it is in his best interest to plead guilty;

(2) The prosecutor committed misconduct when he introduced information that was obtained by use of a warrantless tracking device;

(3) The Court violated Jones's Fourth and Sixth Amendment rights by allowing evidence obtained without a warrant; and

(4) Jones should have received the benefit of the Fair Sentencing Act of 2010.

As directed, the Government filed a response [Doc. No. 7] to the

Petitioner's motion and the Petitioner filed a reply [Doc. No. 11].

Subsequently, the Petitioner filed a rebuttal [Doc. No. 11] to the

Government's response and the Government filed a sur-reply [Doc. No. 12].

The Petitioner has filed a number of additional motions in support of

his habeas motion.

## II. DISCUSSION

### A. Legal standards

A petitioner is entitled to habeas relief under § 2255 if his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. "[R]elief under § 2255 is an extraordinary remedy because it asks the district court to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). A petitioner is not entitled to habeas relief unless there is "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks and citation omitted).

A claim of ineffective assistance of counsel is appropriate to bring in motions under § 2255. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel was deficient in his performance which resulted in prejudice to his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner must show that

counsel's performance "fell below an objective standard of reasonableness." Id. at 688. To demonstrate prejudice, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689.

### B. Ineffective assistance of counsel claim

The Petitioner alleges counsel's failure to investigate resulted in the lack of an effective defense. Jones suggests that counsel did not address his concerns and failed to devise a legal strategy. Jones contends counsel should have questioned the Government's use of the "illegally obtained evidence (warrantless electronic tracking device)," which he asserts violated his Fourth Amendment rights. He contends that counsel never questioned the Government's assertion that a warrant was produced. Because of these problems, the Petitioner claims counsel was ineffective in negotiating the plea bargain which Jones alleges resulted in an erroneous outcome.

Jones does not specify what his attorneys should have done in

mounting a defense. These unsubstantiated claims do not provide evidence of ineffective assistance of counsel. The Court further notes that, during his plea colloquy, under oath, Jones stated that he was satisfied with his counsel and the decision to plead guilty was based on his own free will. Even if counsel's performance could be found to be objectively unreasonable, there is no constitutional violation unless the petitioner can show that he would not have pleaded guilty and would have insisted on going to trial. See Warren v. Baenen, 712 F.3d 1090, 1101 (7th Cir. 2013). The Court concludes the Petitioner's bare allegations that he would have proceeded to trial are not sufficient. "An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found." United States v. Farr, 297 F.3d 651, 658 (7th Cir. 2002).

Jones provides no specifics as to what counsel should have done differently. The Petitioner's conclusory allegations that counsel was incompetent for failing to prepare an adequate defense and for failing to

contest the officers' use of the tracking device do not entitle him to relief. Significantly, the officers were contemporaneously receiving information from the informants regarding the vehicle's whereabouts. Because one of the officers observed a traffic violation, the stop of the vehicle was supported by probable cause. The Petitioner's counsel stated that he had previously discussed the use of the tracking device with Jones on a number of occasions. Regardless of any information from the tracking device, however, law enforcement had probable cause to stop, search and arrest Jones.

In United States v. Jones, 132 S. Ct. 945 (2012), the United States Supreme Court held that the government's attachment of a GPS device to a vehicle and use of that device to monitor the vehicle's movements is a search within the meaning of the Fourth Amendment. See id. at 949. The Court concludes to the extent the Petitioner contends that counsel was ineffective for failing to challenge the evidence pursuant to Jones, that argument is without merit because the Supreme Court decided Jones almost two years after the Petitioner's sentencing.

Although defense attorneys generally are not required to anticipate changes in the law, they may have an obligation to "make an argument that is sufficiently foreshadowed in existing case law." See Shaw v. Wilson, 721 F.3d 908, 916-17 (7th Cir. 2013). The Court concludes that Petitioner's attorneys had no such obligation to predict the Supreme Court's holding because he is unable to show prejudice, based on the probable cause to stop, search and arrest the Petitioner even without the information provided by the tracking device.

Accordingly, the Petitioner's claims of ineffective assistance based on counsel's alleged failure to investigate and/or challenge the tracking device are without merit.

## C. Claims of prosecutorial misconduct and constitutional violations

Jones next alleges that the prosecutor committed misconduct when he introduced evidence of the tracking device. He further asserts that the Court violated his Fourth and Sixth Amendment rights by allowing evidence obtained by law enforcement after use of the tracking device. These claims are without merit and also were waived by the Petitioner when

he entered his guilty plea.

The entry of a "guilty plea constitutes a waiver of non-jurisdictional defects occurring prior to the plea." United States v. Cain, 155 F.3d 840, 842 (7th Cir. 1998). The United States Supreme Court has explained that the entry of a "guilty plea represents a break in the chain of events" in the criminal case because a "defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, [and] he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Because Jones did not specifically reserve any pre-plea issues for review in his unconditional plea, he is barred from raising those issues in this motion.

However, a defendant does not waive an ineffectiveness claim relating to the waiver (or the plea agreement in its entirety) and its negotiation. See United States v. Smith, 759 F.3d 702, 707 (7th Cir. 2014). Thus, Jones can challenge the validity of the plea by demonstrating ineffective assistance

during the plea process.

The Petitioner has failed to demonstrate ineffective assistance relating to his plea. The Court recessed the hearing, allowed Jones several hours to consider the decision, and then proceeded with a detailed colloquy to ensure that his plea was knowing and voluntary. Subsequently, the Petitioner filed two motions to withdraw the guilty plea which were denied. Jones confirmed he wanted the same attorney to represent him. Based on the detailed colloquy at the time the plea was entered, the Court finds that Petitioner's plea was knowing and voluntary.

The Court concludes that by pleading guilty, the Petitioner waived any claims of prosecutorial misconduct and, further, waived claims that the Court violated his constitutional rights by allowing evidence of the tracking device.

The Court further finds that even if they were not waived, Jones's claims of prosecutorial misconduct and constitutional right violations are meritless. The Court found that absent any evidence of a tracking device, law enforcement had probable cause to stop the vehicle and search and

arrest Jones, based on information provided by the informants.

Accordingly, Jones's claims have been waived and are also meritless.

D. Application of the Fair Sentencing Act

The Petitioner alleges he should have received a lower sentence based on the application of the Fair Sentencing Act of 2010. Because Jones had two previous convictions for crimes of violence, he was sentenced as a career offender. The career offender guideline did not change following the enactment of the Fair Sentencing Act. See United States v. Griffin, 652 F.3d 793, 803 (7th Cir. 2011). Therefore, the amendments have no effect on Jones's applicable guideline range as a career offender. See U.S.S.G. § 1B1.10, cmt. N.1(A). Jones is not entitled to a reduced sentenced based on the Fair Sentencing Act.

## III. CONCLUSION

The Petitioner has failed to show that he is in federal custody pursuant to an unconstitutional or illegal sentence. Accordingly, none of his claims warrant relief under § 2255. Jones's ineffective assistance of counsel claims shall be denied. His claims relating to the tracking device

will be dismissed.

An appeal may be taken if the Court issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A). Because the Petitioner has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2255 Proceedings.

Ergo, the Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 filed by Petitioner Steven Jones [d/e 1] is DENIED as to his claims based on ineffective assistance of counsel and the Fair Sentencing Act.

The Petitioner's claims related to the tracking device are procedurally barred based on the Petitioner's guilty plea and are therefore DISMISSED.

The Petitioner's Motion of Inquiry [d/e 14], Motion for Default Judgment [d/e 15] and Motion for Summary Judgment [d/e 17] are DENIED.

The Court declines to issue a certificate of appealability pursuant to

Rule 11 of the Rules Governing Section 2255 Proceedings.

ENTER: November 3, 2014

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge